In re Joseph E. MORRIS, Debtor.

Joseph E. MORRIS, Plaintiff,

v.

CASTLEN REALTY COMPANY and Mary Hunt, Defendants.

Bankruptcy No. 4–82–00385.

Adv. No. 4–83–0002.

United States Bankruptcy Court, W.D. Kentucky.

Sept. 17, 1984.

Russ Wilkey, Owensboro, Ky., for defendants.

Grover S. Cox, Owensboro, Ky., for plaintiff.

Rhonda Taylor, Owensboro, Ky., trustee.

## MEMORANDUM OPINION

MERRITT S. DEITZ, Jr., Bankruptcy Judge.

The question before the court is whether the debtor, Joseph Morris, may assert a homestead exemption in proceeds from the sale of his residence, which are held by the defendants in this action, Castlen Realty Co. and Mary Hunt. Although counsel have raised a number of interesting and potentially complex points of law, the decisive issue is rather simple: Did the debtor have a real estate listing contract with the defendants at the time his house was sold?

The relevant facts of the case have been stipulated. On March 15, 1982, the debtor and his former wife, Maxine, obtained a divorce in the Daviess Circuit Court. By an agreed order on June 25, 1982, that court directed that the marital residence be listed for sale at a price agreeable to the parties.

On the same day as the agreed order, the debtor and his former wife entered into a real estate listing contract with Castlen Realty Co. The agreement provided that Castlen had the exclusive right to sell the debtor's residence for a period of six months at a price of $54,900.00 or for a price acceptable to the owners. The real-tors were to receive a 6% commission on the sale of the home.

After two months the house remained unsold, and the debtor and his ex-wife entered into a new contract with Castlen Realty. The contract provided that the property would be sold at auction, with reserve, and that the debtor and his ex-wife would each pay $250.00 to the auctioneer, Ed Varble of Castlen Realty, in the event the owners rejected the highest bid.[1]

On September 16, 1982, an auction of the debtor's marital residence was held. The high bid of $37,000.00 for the house and lot was rejected by the debtor and his wife. Eleven days after the unsuccessful auction the debtor filed his petition for bankruptcy and listed Castlen Realty as an unsecured creditor.[2]

On October 10, 1982, Castlen Realty informed the debtor and his ex-wife of an offer to purchase their home for $48,100.00. This offer was accepted by the debtor's former wife Maxine, and she signed a real estate sales contract for that amount on the same day. The debtor did not accept the offer and did not sign the sales contract.

Two months after the debtor's ex-wife signed the real estate sale contract, the debtor was ordered by Daviess Circuit Court to "execute any and all documents necessary to implement the closing [of the] real estate transaction." The debtor complied with this order only after a warning of the most severe sanctions by the court.[3] All surplus proceeds from the sale including Castlen's purported commission were ordered held in escrow by Castlen, pending further orders from the Bankruptcy Court. The amount being held in escrow is $1,334.38. It is this fund against which the debtor claims his exemption.

---

1. The auction agreement provided that in the event of a sale, the auctioneer would receive a selling commission of 6% of the purchase price.

2. In his petition for bankruptcy the debtor scheduled Castlen Realty as an unsecured creditor in the amount of $225.00. On November 24, 1982 the debtor amended his schedule of credi-tors and listed the debt owed Castlen Realty as $2,250.00.

3. The debtor was ordered by the Davis Circuit Court to "sign the deed or [g]o to jail". Plaintiff's reply brief, at 2.

█ It is an established rule of contract law that an agreement to rescind a contract need not be express and can be implied.[4] Courts have generally held that where two contracts between the same parties, covering the same subject matter, are inconsistent, the later contract operates as a recession of and a substitute for the earlier contract.[5]

The only issue which must be addressed by the court today is whether the six-month real estate listing contract was rescinded by the subsequent auction sale contract. The facts of this case are analogous to those in the only reported Kentucky case on this issue, *Menefee v. Rankins.* In that case the Kentucky Court of Appeals found that the terms of the first contract, which provided that one of the parties, Menefee, "quit the practice of medicine [in the Walton area]," [6] could not be performed in a manner consistent with the terms of the second contract, which provided that Menefee "remain at Walton and practice medicine for the joint benefit of himself and [his partner]".[7] The court held that under these circumstances, the second contract was so inconsistent with the first that the former contract had to be treated as having been rescinded or abrogated by the latter.[8]

█ In the present case, the two contracts between the debtor and Castlen Realty [9] are clearly inconsistent. The initial listing contract dated June 25, 1982, gave Castlen "the sole and exclusive right to sell [the debtors' residence] for the period of 180 days". When the house did not sell it was determined that it should be put up for public auction and on August 18, 1982, an auction contract was signed by the parties. This second contract between the debtor and Castlen granted the auctioneer "the sole and exclusive right to sell [their marital residence] *at auction*" (emphasis added). The parties further agreed that the debtor and his ex-wife would "not ... sell or further encumber [the marital residence] during the term of the agreement." It is obvious that two "sole and exclusive" rights could not exist at the same time [10] and that the two contracts are clearly inconsistent.

In the present case the defendants offered no evidence which indicated that the parties intended the listing contract to continue in effect in the event the auction was unsuccessful. Their mere assertion that the realty listing contract was not abrogated by the auction contract does not overcome the presumption that the earlier contract was entirely rescinded by the latter. Therefore we hold, consistent with the *Menefee* case, that there was no real estate listing contract between the debtor and the defendants at the time the house was sold. It necessarily follows that the fund held in escrow by Castlen Realty is the property of the debtor, and that it was properly claimed as a homestead exemption under KRS 427.060.

It is therefore ORDERED that the debtor's claimed homestead exemption is SUS-

---

**4.** 17 AM.JUR 2d, Contracts § 493, *Implied Recission by new agreement,* at 956–66.

**5.** *Circle v. Jim Walter Homes, Inc.,* 470 F.Supp. 39 (W.D.Okl.1979); *In re Beck,* 24 B.R. 296 (Bkrtcy.D. Hawaii 1982); *Menefee v. Rankins,* 158 Ky. 78, 164 S.W. 365 (1914).

**6.** *Menefee v. Rankins,* 158 Ky. at 84, 164 S.W. 365.

**7.** *Id.*

**8.** *Id.* at 86, 164 S.W. 365. It has generally been held that where two contracts between the same parties are inconsistent, the later contract is *presumed* to supersede the earlier contract. 6

Corbin, Contracts § 1296 (2d ed. 1962). However, under Kentucky law it is *conclusively presumed* that a written contract "complete in itself will ... supersede another one made prior thereto in relation to the same subject matter". *Menefee v. Rankins,* 158 Ky. at 82, 164 S.W. 365.

**9.** The debtor did not sign and was not a party to the real estate sales agreement. His only participation in the sales transaction was his court-ordered signing of the deed transferred to the purchasers.

**10.** The exclusive listing contract was to run for a period of 180 days, from June 25, 1982 to December 22, 1982. The exclusive auction contract ran from August 16, 1982 to the date of the auction, September 16, 1982.

TAINED, and the objections thereto are OVERRULED. This is a final Order.